**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
Malinda A. Miller, Esq.
NJ Attorney ID #: 020691996
S. Christopher Marino, Esq.
NJ Attorney ID #076692013
One Riverfront Plaza
1037 Raymond Blvd., 8th Floor
Newark, New Jersey 07102
Tel: (973) 577-6260
Fax: (973) 577-6261
*Attorneys for Defendants, Alliance HC Holdings, LLC d/b/a Andover Subacute & Rehabilitation I; Alliance HC II LLC d/b/a Andover Subacute & Rehabilitation II (Alliance Healthcare being improperly pleaded by name and as a separate entity); Chaim "Mutty" Scheinbaum; Louis Schwartz*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ESTATE OF JOSEPH MAGLIOLI, BERNARD MAGLIOLI and DANTE MAGLIOLI, and ESTATE OF DALE PETRY and CHRISTOPHER PETRY,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ANDOVER SUBACUTE REHABILITATION CENTER I; ANDOVER SUBACUTE REHABILITATION CENTER II; ALTITUDE HEALTH SERVICES INC.; ALTITUTDE INVESTMENTS, LTD; ALLIANCE HEALTHCARE; CHAIM "MUTTY" SCHEINBAUM; LOUIS SCHWARTZ; HEALTHCARE SERVICES GROUP; JOHN AND JANE DOES 1-10; and ABC AND XYZ Corporations 1-10,<br><br>　　　　　　　　　Defendants. | Civil Action No.:<br><br><br><br>**NOTICE OF REMOVAL OF CIVIL ACTION** |

**TO:**　Clerk of Court
　　　　United States District Court for the District of New Jersey
　　　　Martin Luther King Building & U.S. Courthouse
　　　　 50 Walnut Street
　　　　Newark, NJ 07101

**WITH NOTICE TO:**

　　　　Daniel P. Marchese, Esq.
　　　　The Marchese Law Firm, LLC

93 Spring Street, Suite 300
Newton, NJ 07860
*Counsel to Plaintiffs*

**PLEASE TAKE NOTICE THAT** Defendants, Alliance HC Holdings, LLC d/b/a Andover Subacute & Rehabilitation I; Alliance HC II LLC d/b/a Andover Subacute & Rehabilitation II (Alliance Healthcare being improperly pleaded by name and as a separate entity); Chaim "Mutty" Scheinbaum; Louis Schwartz (collectively "Defendants"), hereby remove to this District Court the state action currently pending in the Sussex County Superior Court of New Jersey pursuant to 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446  described more fully below.

## PLEADINGS

1. On or about April 28, 2020, Counsel on behalf of Plaintiffs filed a Complaint in the Superior Court of the State of New Jersey in and for the County of Sussex entitled, *Estate of Joseph Maglioli, Bernard Maglioli and Dante Maglioli v. Andover Subacute Rehabilitation Center I, et al.* as Docket No. SSX – L – 176 – 20. The suit named the aforementioned Plaintiffs as well as "others similarly situated" as part of a purported Class Action. **A true and accurate copy of the Complaint is attached hereto as Exhibit "A."**

2. On or about May 18, 2020, a First Amended Complaint was filed in the Superior Court of New Jersey – Sussex County amending the action to name additional named Plaintiffs including the Estate of Dale Petry and Christopher Petry. **A true and accurate copy of the First Amended Complaint is attached hereto as Exhibit "B."**

3. On or about May 26, 2020, a Second Amended Complaint was filed in the Superior Court of New Jersey – Sussex County amending the action to identify an additional Defendant, Healthcare Services Group.  **A true and accurate copy of the Second Amended Complaint is attached hereto as Exhibit "C.**

## TIMELINESS OF REMOVAL

4. Defendants' removal is timely under 28 U.S.C. § 1446(b) as it is being filed within 30 days of receipt by Defendants, through service or otherwise, of a copy of the pleading from which it may be ascertained that the case is removable. Counsel for Defendants was only recently authorized to accept service as of May 29, 2020. No other defendants have been served or have entered appearances as of the date of this filing.

5. Concurrent with the filing of this Notice, Defendants are serving this Notice of Removal upon Plaintiffs and filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of New Jersey – Sussex County pursuant to 28 U.S.C. § 1446(d). Disclosure of Corporate Interests Forms are also being submitted as is a complete copy of the State Court File.

## INTRADISTRICT ASSIGNMENT

6. The United States District Court for the District of New Jersey embraces the district and division in which the Sussex County, New Jersey state court action is now pending, and thus this Court is a proper venue for the action pursuant to 28 U.S.C. § 110.

## JURSIDICTION EXISTS UNDER 28 U.S.C. § 1331 (FEDERAL QUESTION)

7. Plaintiffs' Complaint sounds in medical negligence and alleges that Defendants "failed to protect them from the Covid-19 virus during and throughout the outbreak and pandemic." **Exhibit A.**

8. Plaintiffs specifically allege Defendants are culpable for failure to properly administer and utilize equipment and supplies which were designated counter measures to combat the COVID-19 outbreak including but not limited to items identified as personal protective equipment, such as facemasks. **Exhibit A**.

9. The Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d 6d, 247d-6e(2006) and the Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020) are federal statutes that apply specifically to medical providers such as Defendants in the administration of countermeasures to prevent or mitigate the spread of COVID-19.

10. Because Plaintiffs have alleged a claim which is pre-empted under a Federal Statute, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331; see <u>Parker v. St. Lawrence County Public Health Department</u>, 102 A.D.3d 140, 954 N. Y.S. 2d 259 (2012).

11. Notwithstanding 28 U.S.C. § 1331, this court is also specifically granted jurisdiction by §247d-6d(b)(8)(A), (1), which states "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or is in conflict with, any requirement applicable under this section" and (2) relates to, among other things, use or administration of the covered countermeasure."

12. The Defendants' administration of countermeasures, such as the use of facemasks and other personal protective equipment to prevent or mitigate the spread of COVID-19, which forms the basis of this action, presents a federal question under the PREP Act giving this Court original jurisdiction pre-empting all state law claims asserted by Plaintiff in the Complaint.

13. The PREP Act provides liability protections for pandemic and epidemic products and security countermeasures. Specifically, this legislation empowers the Secretary of Health and Human Services (HHS) to issue a written declaration and provide that a "covered person" shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" during a health emergency. 42 U.S.C. § 247d–6d(a)(1). Here, the Secretary issued a Declaration, which became effective on February 4, 2020, to

provide liability immunity for activities related to medical countermeasures against COVID-19. This declaration was amended March 17, 2020 to specifically include "respiratory protective devices." 85 FR 21012.

14. To qualify for liability immunity under the PREP Act, the healthcare provider must (1) meet the definition of a "Covered Person," (2) administer or use a "Covered Countermeasures," and (3) administer "Covered Countermeasures" during a "Recommended Activity" in relation to COVID-19. 42 U.S.C. § 247d–6d. Here, the PREP Act immunity applies pre-empting Plaintiffs' state law claims because Defendants are covered healthcare providers who qualify as persons administering and/or using a covered countermeasure during the COVID-19 outbreak.

**Defendants Qualify as a Covered Persons under the PREP Act**

15. Defendants are "Covered Person" as contemplated by 42 U.S.C. § 247d–6d. In pertinent part, a "covered person" includes a person or entity that "is a qualified person who prescribed, administered, or dispensed" COVID-19 Countermeasures. 42 U.S.C. § 247d–6d(i)(2)(B)(iv). A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." Further, the PREP Act defines a "person" as "an individual, partnership, corporation, association, entity, or public or private corporation, including a federal, state or local government agency or department." In this case, Plaintiffs' allegations relate to the measures taken by the Defendants to prevent or mitigate the spread of COVID-19, including the use of facemasks and other personal protective equipment. Defendants qualify as "covered persons" because Defendants are healthcare providers and/or owners/officers of licensed health professionals authorized to administer and/or use FDA approved medical devices, such as facemasks to prevent or mitigate the spread of COVID-19.

16. This action is properly removable under 28 U.S.C. § 1441(a) as this United States District Court has original jurisdiction of this case under 28 U.S.C. § 1331, which provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

See 28 U.S.C. § 1331

**Federal Question jurisdiction exists as there are significant federal issues central to resolution that arise under federal law.**

17. Plaintiffs' claims against Defendants include claims for general negligence, medical negligence, wrongful death, class action, and punitive damages. Each cause of action is based on Plaintiffs' underlying theory that Defendants failed to exercise ordinary care to keep the premises and approaches safe by failing to take and enforce precautions designed to prevent the spread of COVID-19 while Plaintiffs resided at the identified facilities including the use, distribution and administration of respiratory protective devices. As referenced in Plaintiffs' Second Amended Complaint, the precautions at issue concern Defendants' use of facemasks and other personal protective equipment as a countermeasure to prevent or mitigate the spread of COVID-19. These are the precise respiratory protective devices mentioned in the PREP Act Directive issued to address COVID-19.

18. Federal jurisdiction is further appropriate as the state action "arises under" federal law and raises a substantial federal issue, actually disputed and substantial. See Grable & Sons Metal Prods. V. Darue Eng'g & Mfg., 545 U.S. 308 (2005). Further, the federal court in retaining jurisdiction would not disturb a balance of state and federal responsibilities. Id.

19. The PREP Act immunity asserted in this action preempts all state law claims, and its applicability poses a "substantial federal issue" which would serve to clarify and determine vital issues of law.

## JURSIDCTION EXISTS PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUE (28 U.S.C. § 1442(a)(1)

20. Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

21. "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila., 790 F.3d 457, 466 (3d Cir. 2015) (quoting Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994).

22. The case is removable pursuant to Section 1442(a) because "(1) Defendants are 'persons' within the meaning of the statute; (2) the Plaintiffs' claims are based upon Defendants' conduct 'acting under' the United States, its agencies, or its officers; (3) the Plaintiffs' claims are 'for, or relating to' an act under color of federal office; and (4) Defendants raise a colorable federal defense to the Plaintiff's claims." Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016). All requirements for removal under § 1442(a)(1) are satisfied here.

23. Defendants are all "persons" under the federal officer removal statute. Alliance HC Holdings, LLC (d/b/a Andover Subacute and Rehabilitation I), Alliance HC 11 LLC (d/b/a Andover Subacute and Rehabilitation II), are corporate entities, and corporations are "person[s]" pursuant to Section 1442(a)(1). Papp, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation is in legal fact a person" (citing 1 U.S.C. § 1)). Remaining Defendants Chaim Scheinbaum and Louis Schwartz are individuals acting as owners/officers of the aforementioned entities.

24. The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir.

2012)(quoting <u>Watson v. Philip Morris Cos., Inc</u>., 551 U.S. 142 (2007)); <u>see also</u> <u>Defender Ass'n</u>, 790 F.3d 457, 468 (2015).

25. To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" <u>Watson</u>, 551 U.S. at 152. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." <u>Papp</u>, 842 F.3d at 813.

26. A specific instruction from a federal officer, or a detailed regulation to compel specific conduction satisfies the second requirement. <u>See</u> <u>Winters v. Diamond Shamrock Chem. Co.</u>, 149 F.3d. 387 (5th Cir. 1998).

27. The following are an exemplary, but are no way a complete list of some of the detailed directives and regulations issued by Centers for Medicare and Medicaid Services ("CMS") and the Centers for Disease Control ("CDC") to specifically compel healthcare providers and nursing homes like the defendants to assist in the national effort to respond to the COVID-19 pandemic.

28. As early as February 6, 2020, CMS took direct action to prepare healthcare facilities for a national response to what would be become the COVID-19 pandemic.[1]

29. Additionally, as early as February 1, 2020, the CDC was providing superseding guidance to state and local health departments and healthcare facilities including detailed recommendations for patient screening for the COVID-19 virus. In issuing such guidance, the CDC acknowledged that current knowledge of the nature of the virus was evolving, and that these efforts were part

---

[1] Centers for Medicare & Medicaid Services, Press Release "CMS Prepares Nation's Healthcare Facilities for Coronavirus Threat" (February 6, 2020) (available at https://www.cms.gov/newsroom/press-releases/cms-prepares-nations-healthcare-facilities-coronavirus-threat).

of an "ongoing US public health response to identify and contain this outbreak and prevent sustained spread of 2019-nCov in the United States."[2]

30. On or about March 4, 2020, CMS announced several additional actions aimed at limiting the spread of the COVID-19 virus, including requiring healthcare facilities to maintain specific infection control and prevention policies as a condition for participation in CMS programs.[3] Additionally, CMS guidance on this date called for healthcare facilities to work at the direction and coordination of the CDC and local public health departments. Finally, CMS guidance on this date addressed the screening of entrants into nursing facilities. Defendants followed these directives in an effort to assist, or to help carry out, the duties or tasks of CMS and the CDC in responding to the COVID-19 pandemic.

31. On March 10, 2020, CMS published a memorandum clarifying and amending policies and guidance in light of the CDC's expansion of the types of facemasks healthcare workers may use in situations involving COVID-19.[4] In doing so, CMS acknowledged the federal government was taking "critical steps" to prepare health care facilities to respond to COVID-19, and acknowledged the need to "explore flexibilities and innovative approaches within our regulations to allow health care entities to meet the critical health needs of the country." The memorandum issued on this date cites specifically to updated guidance from the CDC regarding addressing the supply, allocation, and use of various items utilized to prevent the spread of

---

[2] Centers for Disease Control and Prevention, Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (February 1, 2020) (available at https://emergency.cdc.gov/han/HAN00427.asp).

[3] Centers for Medicare & Medicaid Services, Guidance for Infection Control and Prevention Concerning Coronavirus (COVID-19): FAQ's and Considerations for Patient Triage, Placement and Hospital Discharge (March 4, 2020) (available at https://www.cms.gov/files/document/qso-20-13-hospitalspdf.pdf-2).

[4] Centers for Medicare & Medicaid Services, Guidance for use of Certain Industrial Respirators by Health Care Peronnel (March 10, 2020) (available at https://www.cms.gov/files/document/qso-20-17-all.pdf).

infection and directly treat the virus including PPE and respirators, and further provided guidance on the use of airborne infection isolation rooms (AIIR).

32. As previously noted, on this same date, the Secretary of Health and Human Services (HHS) issued notice pursuant to section 564 of the Federal Food, Drug, and Cosmetic (FD&C) Act that there is a public health emergency that has a significant potential to affect national security or the health and security of United States, and in doing so, declared justifying the authorization of emergency use of personal respiratory protective devices during the COVID-19 outbreak, pursuant to section 564 of the FD&C Act, subject to the terms of any authorization issued under that section.[5]

33. Three days later, on March 13, 2020, CMS published <u>revised</u> directives, specifically aimed at nursing homes, to "improve infection control and prevention practice to prevent the transmission of COVID-19." [6] In updating its directives, CMS ordered facilities to restrict visitors, cancel communal activities, screen staff, amend policies regarding interaction with vendors, and handle potential end-of-life interactions with family members, among other interventions. CMS also provided guidance regarding patient transfers and accepting patients with COVID-10. Critically, CMS memorandum on this date acknowledged scarcity of PPE such as gowns, N95 respirators, surgical masks and ABHR, and noted it would not cite facilities for lack of supplies for reasons outside of their control. Again, CMS directed infection control efforts and clarified CDC guidance to preserve scarce medical resources including PPE and maximize the capacity of the healthcare system to mitigate the spread of the pandemic.

---

[5] Department of Health and Human Services, Office of the Secretary, Emergency Use Declaration, Federal Register/ Vol. 85, No. 47 (March 10, 2020) (available at https://www.govinfo.gov/content/pkg/FR-2020-03-10/pdf/2020-04823.pdf).

[6] Centers for Medicare & Medicaid Services, Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Revised) (March 13, 2020) (available at https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf).

34. On this date, President Donald J. Trump issued a "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak. Following same, rapid action was taken to waive restrictions and expand capacity for healthcare entities, providers, and suppliers to coordinate a national response to the national emergency.

35. On April 2, 2020, CMS issued **new** guidelines aimed specifically to long-term care facilities to mitigate the spread of COVID-19, with the stated purpose of 'critical, needed leadership" and issuing "immediate" actions to "keep patients and residents safe."[7] Specifically, CMS directed long-term care facilities to "immediately" ensure compliance with "all CMC and CDC guidance related to infection control." Again, CMS specifically referenced and referred facilities to updated and revised CDC guidelines. CMS also implemented a number of actions to be undertaken immediately including 1) universal screening; 2) conservation of PPE; 3) proper PPE use; and 4) allocation of separate staffing, among other directives.

36. On April 19, 2020, CMS announced new regulatory requirements requiring nursing facilities to inform residents, families, and representatives of COVID-19 cases.[8]

37. At all relevant times, Defendants in the present action, in their preparation and response to the COVID-19 outbreak, were acting at the specific instruction and oversight of the federal government, specifically the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the Center for Disease Control and Prevention in responding to a federal effort to address the on-going national state of emergency. Defendants

---

[7] Centers for Medicare & Medicaid Services, COVID-19 Long-Term Care Facility Guidance (April 2, 2020) (available at https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-guidance.pdf).

[8] Centers for Medicare & Medicaid Services, Press Release "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (April 19, 2020) (available at https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort).

        actions were taken "in an effort to assist, or to help carry out, the duties or tasks" dictated by the CDC and CMS in responding to the COVID-19 pandemic.

38. Defendants' actions and conduct were taken due to unprecedented and "strong government intervention" which went beyond the "mere auspices of federal direction." See Fung v. Abex Corp., 816 F. Supp. 569, 572 (N. D. Cal. 1992).

39. Defendants' were acting specifically at the direction and under the supervision of the United State government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus including following evolving and specific guidelines from CMS and the CDC with respect to: 1) infection control policies and procedures; 2) PPE procurement; 3) PPE allocation; 4) admission and discharge of residents; 5) managing visitors and outside persons 6) staffing allocation and retention; 7) isolation protocols and management, among multiple additional directives.

40. In short, Defendants response to the COVID-19 outbreak as it relates to these Plaintiffs was directly related to what they were asked to do by the federal government.

41. The next requirement, often referred to as the "nexus" or "causation" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." Defender Ass'n, 790 F.3d at 471.

42. There is a clear causal nexus between the claims against Defendants and the actions taken by Defendants in responding to and administering care related to the COVID-19 outbreak. Plaintiffs' Complaint specifically alleges a deficiency in Defendants' actions concerning use of PPE and infection control procedures taken in efforts to prevent the spread of COVID-19 within the nursing facilities while preserving resources to enable a nationwide response. Unquestionably, the nexus element is met as evidence by various orders, guidelines and recommendations followed by the Defendants' in addressing same.

43. Finally, Defendants meet the final requirement insofar as Defendants intend to assert a colorable federal defense including, among others, the immunity under the PREP Act applies to the present action. For the purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal court. Willingham v. Morgan, 395 U.S. 402, 407 (1969).

44. As previously set forth, Defendants' assert that they are immune from liability in this matter under the PREP Act as they meet the requirements of "covered person" as contemplated by 42 U.S.C. § 247d–6d. In pertinent part, a "covered person" includes a person or entity that "is a qualified person who prescribed, administered, or dispensed" COVID-19 Countermeasures. 42 U.S.C. § 247d–6d(i)(2)(B)(iv). Further, Defendants' actions specifically related to this claim constitute "covered countermeasures" pursuant to the PREP Act which would qualify and trigger immunity from liability for the purposes of the present suit.

**WHEREFORE**, Defendants hereby notifies Plaintiffs that the above-entitled action, formerly pending in the Sussex County Superior Court has been removed from that court to this Court.

By:   /s/ *Malinda A. Miller*

Malinda A. Miller, Esq.
S. Christopher Martino, Esq.
LEWIS BRISBOIS BISGAARD & SMITH, LLP
One Riverfront Plaza
1037 Raymond Blvd., 8th Floor
Newark, New Jersey 07102
Tel: (973) 577-6260
Fax: (973) 577-6261
*Attorneys for Defendants, Alliance HC Holdings, LLC d/b/a Andover Subacute & Rehabilitation I; Alliance HC II LLC d/b/a Andover Subacute & Rehabilitation II (Alliance Healthcare being improperly pleaded by name and as a separate entity); Chaim "Mutty" Scheinbaum; Louis Schwartz*

Date: May 29, 2020

4826-1205-1390.1